[Civ. No. 14892. First Dist., Div. Two. Mar. 14, 1952.]

W. A. CLAUDINE, Respondent, v. JOHN WEST, Appellant.

Harold J. Abraham for Appellant.

Nathan Goldwater and John L. McVey for Respondent.

NOURSE, P. J.—Plaintiff sued in equity for the cancellation of a written agreement, for a declaration that defendant had no interest in described real property, and for a money judgment for sums which had been paid defendant under the agreement. The appeal is taken from the ensuing judgment for plaintiff.

There is little conflict in the evidence. Plaintiff was owner of two dwellings which were rented for $25 a month each. He was under some tentative agreement to sell both for $5,000 or $6,000. He approached defendant and asked him to get him out of the deal. This was in the year 1942. The parties entered into an oral agreement under which defendant would devote his efforts to procuring a sale or lease of the properties to the Federal Government Housing Authority. Through the efforts of defendant the government reconstructed the premises and leased them. The value of the properties was thereby increased from $5,000 to $17,000 and the rentals were increased from $25 a month to approximately $165 each. Under the terms of this oral agreement these increased rentals were divided between the parties— 60 per cent to plaintiff and 40 per cent to defendant. All rentals were collected by the plaintiff and he consistently paid to defendant 40 per cent of them for a period of about six years. This continued until June 25, 1945, when the oral agreement was reduced to writing. The pertinent provisions of this contract are that it was executed "in consideration of services rendered by John West in the management of the properties . . . and further in consideration of other services . . ." Other provisions were: "FIRST: That all income, save and except Fifty (50) Dollars per month, derived from the lease on said properties with the Home Owners Loan Corporation shall be divided in the ratio of sixty (60) per cent for W. A. Claudine and forty (40) per cent for John West.

"SECOND: That following the expiration of the lease with the Home Owners Loan Corporation [sic—omission?] before the date of expiration, the net income derived from rentals of said properties and buildings shall be divided in the ratio of sixty (60) per cent for W. A. Claudine and forty (40) per cent for John West.

"THIRD: That in the event I, W. A. Claudine, decide to sell said properties, the said John West shall have the privilege and right of first refusal to purchase the same but should the said John West not exercise the right of purchase, then the proceeds from the sale of said property, save and except Six Thousand (6000) Dollars shall be divided in the ratio of sixty (60) per cent for W. A. Claudine and forty (40) per cent for John West." Further light on the relationship of the parties is found in paragraph 5 which reads: "It is understood and agreed that said John West will supervise the management of said properties including the making of necessary repairs, making arrangements for all necessary insurance, and making arrangements with respect to all legal matters growing out of the care and management of said properties both during the period of the said lease and following its cancellation or expiration and until the sale of said properties by W. A. Claudine or his heirs, successors and assigns." The terms of this agreement were strictly followed until 1948 when plaintiff repudiated it and commenced this action.

On the filing of the complaint the plaintiff for the first time took the position that the defendant throughout this period of six years was acting as an unlicensed real estate broker and that the contracts, both oral and written, were void under the statute of frauds. However, when both parties went to the Federal Authority for the execution of the lease with that agency its representative called respondent's attention to section 20 of the lease which read: "The Lessor warrants that he (she) (it) (they) has/have not employed any person to solicit or secure this lease upon any agreement for a commission, percentage, brokerage, or contingent fee." Thereupon respondent assured this representative that he and appellant were partners and that they were acting as such in this transaction.

On this state of facts the trial court held that the contracts, both oral and written, were void because appellant did not hold a broker's license. The action is in equity, but there is no equity in the judgment. There is no evidence of fraud or unjust enrichment on the part of appellant. On the other hand all the evidence discloses that respondent received all he asked for and suffered no harm. It was solely through respondent's representation to the Federal Authority that appellant was not a broker or agent (but a partner or joint adventurer, it does not matter which)

that respondent was able to obtain the valuable lease from that authority.

There was other evidence to support appellant's plea of a joint adventure. The written contract does not have the tone of a broker's or agent's contract. The division of the profits at 60 per cent and 40 per cent is not the usual compensation for a real estate broker's efforts. This is a matter of common knowledge and fully supports appellant's contention that throughout the operation of both contracts the parties assumed a relation of partnership, or joint adventure, and, such being the case, the respondent is estopped from repudiating the contracts while retaining the benefits of the transaction.

There was no evidence to support the finding that the relation of the parties was that of owner and broker. There was ample evidence to support a finding of a relation of joint adventure or partnership.

Judgment reversed.

Goodell, J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied April 12, 1952, and respondent's petition for a hearing by the Supreme Court was denied May 12, 1952. Carter, J., and Spence, J., were of the opinion that the petition should be granted.